UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-369-MOC

| | | |
|---|---|---|
| KEVIN FONSECA, | ) | |
| | ) | |
| Plaintiff, pro se, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TEAMSTERS LOCAL UNION 71, | ) | |
| ERNEST WRENN, | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss for Failure to State a

Claim, filed by Defendants Teamsters Local Union 71 and Ernest Wrenn. (Doc. No. 41).

I.       BACKGROUND

Pro se Plaintiff Kevin Fonseca has filed numerous lawsuits related to his employment

with the American Red Cross. The American Red Cross hired Plaintiff in 2015 and terminated

his employment on two separate occasions. The American Red Cross first fired him in 2017.

Defendant Teamsters Local Union 71 (the "Union"), his labor union, successfully challenged his

termination at arbitration and secured his reinstatement. The American Red Cross fired him

again two years later in 2019.

The Union again challenged his termination and fought for his reinstatement at a five-day

arbitration held in late 2020. An Arbitrator upheld his discharge. Plaintiff has since filed

numerous lawsuits in state court, federal court, and federal administrative agencies. Depending

on the forum, Plaintiff has contended he was discriminated against because the Union

successfully fought against his first termination, Doc. No. 1 ("Compl.") ¶ 45; because of personal

1

animosity, Compl. ¶ 44; because he threatened to sue the Union, Compl. ¶ 45; because of his race, <u>Fonseca v. Am. Nat'l Red Cross</u>, Case No. 3:20-cv-620-RJC-DSC; because of his age, <u>id.</u>; and because he complained about sexual harassment.

On July 26, 2021, Plaintiff, acting pro se, filed the Complaint in this case, alleging that Defendant violated its duty of fair representation under 29 U.S.C. § 185. That same day, Plaintiff filed a nearly identical pro se Complaint against Defendant in the North Carolina Superior Court of Mecklenburg County. On August 26, 2021, Defendants removed that state court action on the basis of federal question jurisdiction. On November 4, 2021, in separate litigation, Magistrate Judge David S. Cayer recommended that the court issue a pre-filing injunction against Plaintiff as a vexatious litigant. <u>See</u> <u>Fonseca v. American Nat'l Red Cross</u>, 3:21-cv-452, Doc. No. 8 (W.D.N.C. Nov. 3, 2021).

On November 5, 2021, Defendant filed a motion to consolidate this case with Case No. 3:21-cv-450, which was granted on December 7, 2021. (Doc. Nos. 17, 26). On December 20, 2021, Defendant filed a motion for judgment on the pleadings. (Doc. No. 29). In his response, Plaintiff requested leave to amend his complaint. (Doc. No. 33 at 13).

On January 26, 2022, this Court issued an order granting Plaintiff thirty days to amend his Complaint. (Doc. No. 36). Plaintiff filed an Amended Complaint thirty-four days later, on March 1, 2022.[1] (Doc. No. 38). Defendants filed the pending motion to dismiss the Amended Complaint on March 25, 2022, Plaintiff filed a response on April 13, 2022, and Defendants filed a Reply on April 20, 2022. (Doc. Nos. 41, 44, 45).

**A. Plaintiff's Termination and Arbitration**

---

[1] Defendants contend that the Amended Complaint should be dismissed as untimely. The Court declines to dismiss the Amended Complaint based on the fact that Plaintiff filed it four days late.

2

Plaintiff worked for the American Red Cross from August 2015 to November 4, 2019. (Am. Compl. ¶¶ 8–10). He was a member of the collective bargaining unit represented by Defendant International Brother of Teamsters, Local 71 (the "Union"). (Am. Compl. ¶¶ 3, 11). Under the terms of the collective bargaining agreement ("CBA"), bargaining unit members may only be terminated for "just cause." (Mot. to Dismiss, Ex. 1 ("CBA") at 42– 43).

The CBA includes a grievance procedure and provides that any alleged violation of its terms will be resolved through private arbitration. (Id. at 53–54; Am. Compl. ¶ 25 fn. 1). At the time of his termination, Plaintiff had the following disciplinary history:

> • After being hired in August 2015, Plaintiff had been terminated by the Red Cross once before, in September 2017, for "insubordination, failure to properly log hours, and leaving behind essential equipment." (Award p. 6). The Union grieved his discharge and secured his reinstatement pursuant to a 2018 arbitration award. (Id. p. 6).
> • In November 2018, shortly after his reinstatement, Plaintiff was counseled for accruing twenty-five points on his driving record. (Id. p. 7).
> • On February 25, 2019, Plaintiff was issued a verbal warning for not properly maintaining requirement Department of Transportation driver logs. (Id.).
> • On February 26, 2019, Plaintiff received a written warning for making threatening statements to a co-worker. (Id.).
> • In March 2019, Plaintiff received a written warning for failing to bring equipment to a blood drive, causing it to start late. (Id.).
> • In June 2019, Plaintiff received a final warning for insubordination after refusing to meet with a supervisor. (Id.). The Union grieved this final written warning; the grievance was denied and not pursued to arbitration. (Id. p. 7 n. 6).
> • In July 2019, Plaintiff received a second final warning and three-day suspension for accessing the Employer's e-mail system in an unauthorized manner. (Id. p. 7). The Union grieved the second final warning and pursued to the Piedmont Grievance Committee, where it was unanimously denied. (Id. p. 7 n.7). This was as far as the Union could have pursued this disciplinary action, as it can only appeal decisions of the Piedmont Grievance Committee when the Committee deadlocks. See (CBA p. 9).

The alleged pre-termination misconduct identified in Plaintiff's Amended Complaint closely track the allegations in Plaintiff's original Complaint. Plaintiff again alleges that Defendant failed to process "past grievances with the Employer" through the CBA's grievance process "on three separate accounts." (Am. Compl. ¶¶ 24, 28, 48). Plaintiff adds allegations

3

contending that "it is required by the CBA grievances process that Plaintiff must have the minimal of a Step 1 and a Step 2 on grievances." (Am. Compl. ¶ 47). Plaintiff also quotes the CBA's grievance process, which affords the Union discretion in the processing of grievances. See, e.g., (Am. Compl. ¶ 25 fn. 1 (quoting CBA p. 53–54 (providing grievances "may be appealed by the Union")). Plaintiff also adds the allegation that Defendant "if the Defendant would have addressed the grievances, they would have found that they are frivolous and unwarranted and would have been dismiss[ed]." (Am. Compl. ¶¶ 30, 49).

Plaintiff again references three e-mails attached to his original Complaint, Am. Compl. ¶ 24, which are dated February 28, 2019; June 25, 2019, and July 8, 2019. (Mot. to Dismiss, Ex. 2). In the February 28, 2019, and July 8, 2019 e-mails, Ernest Wrenn, the Union's business agent, informed the Red Cross that it would not continue advancing grievances over certain disciplinary actions, but would instead consider them "protested" in the event future disciplinary actions were taken. In the June 25, 2019 e-mail, the Union urged the Red Cross to rescind a final written warning issued to Plaintiff. Plaintiff again contends that Defendant Wrenn engaged in some form of misconduct when he sent two e-mails stating that the Union would consider two pre-termination disciplinary actions "under protest." (Am. Compl. ¶ 54). Plaintiff adds an allegation stating that e-mails stating that the warnings at issue would be considered "as 'Protested'" were "false and misleading" and that "[t]his statement is not part of the grievance procedures and is violation of CBA." (Id. fn. 3).

Plaintiff alleges that Defendants acted "in bad faith reassuring the Plaintiff that the previous BA emails concerning the grievances will be addressed." (Am. Compl. ¶ 59). Plaintiff adds an allegation that "Defendant's attorney James F. Wallington gave reassurance that grievances will be heard before or during the arbitration hearing." (Am. Compl. ¶ 61).

4

Finally, Plaintiff alleges that Defendants had an "openly hostile attitude toward Plaintiff" and "condoned the management's retaliatory response" to Plaintiff's complaints, id. ¶ 64, and "process[ed] grievances based on the potential Plaintiff's disloyalty to the Union or personal animosity because Plaintiff has threatened Union with a lawsuit," id. ¶ 67. Plaintiff adds allegations regarding January 2019 charges filed by Defendant Wrenn with the Union's executive board, and further alleges that Defendant Wrenn "was complicit with ARC during a Piedmont Grievance Committee hearing on October 23, 2019, in agreeing with ARC on a false statement." See (Am. Compl. ¶¶ 65, 66, 68).

On October 13, 2019, Plaintiff arrived late at a blood drive without necessary equipment. See (Mot. to Dismiss Ex. 3 ("Award"), pp. 7–12). This frustrated the sponsor of the blood drive, which had been an important source of African-American donors. (Id. pp. 8–9). As a result of Plaintiff being late and forgetting to bring necessary equipment, the Red Cross lost several donors. (Id. p. 9). The blood drive's sponsor did not host a drive the following year. (Id. p. 12).

As a result, the Red Cross terminated Plaintiff's employment on November 4, 2019. (Am. Compl. ¶ 10). Plaintiff grieved the termination, and the Union pursued Plaintiff's grievance through arbitration. (Am. Compl. ¶ 31; Award).[2] The parties held a five-day remote arbitration on August 12, August 31, September 1, September 16, and September 30, 2020. (Am. Compl. ¶ 31; Award p. 1). Plaintiff participated in the hearing and provided his own testimony. (Am. Compl. ¶ 31; Award pp. 17–24). Plaintiff alleges that Defendant "refuse[d] to call and subpoena

_____

[2] On December 18, 2019, the Plaintiff filed a charge with the NLRB, contending that the Red Cross violated the National Labor Relations Act by terminating him in retaliation for protected activity. See (Mot. to Dismiss Ex. 4, NLRB Charge No. 10-CB-251715; Award pp. 11–12). The NLRB subsequently deferred these allegations for resolution by the arbitrator resolving the CBA grievance. See (Mot. to Dismiss, Exs. 5, 6; Award pp. 11–12).

5

witnesses after requesting a witness list from Plaintiff." (Am. Compl. ¶ 73).

Although the Red Cross initially objected to much of his testimony, Plaintiff was permitted to testify, not just regarding the misconduct that led to his termination, but also "about each of his prior disciplines even if they had not been challenged or processed through the grievance and arbitration procedure." (Award p. 17 n.12; see also id., pp. 17–24). In addition to his testimony, Plaintiff separately "submitted a post-hearing brief, reply brief, and exhibits" to the Arbitrator. (Award p. 24 fn. 14).

The Union and the Red Cross submitted post-hearing briefs on December 23, 2020. (Id. at p. 1). The Union argued, inter alia, that Plaintiff should be reinstated to his position because the Red Cross failed to follow mandatory procedures set out in the CBA, had not shown just cause for Plaintiff's termination, and treated Plaintiff differently than other similarly situated employees. (Award pp. 15–17).

Arbitrator Joan Parker issued a decision upholding Plaintiff's termination on January 23, 2021. (Am. Compl. ¶ 34). Arbitrator Parker rejected the Union and Plaintiff's arguments that the Red Cross failed to establish just cause for Plaintiff's termination. Arbitrator Parker recognized that Plaintiff was "well aware of the consequences of leaving behind equipment," and that he had been disciplined with respect to missing equipment at least twice before October 2019 – once in September 2017, and once in March 2019. (Award pp. 27–28). Arbitrator Parker then concluded that the Red Cross conducted a fair investigation of the misconduct, found that it followed proper disciplinary procedures, rejected various arguments that attempted to mitigate the severity of Plaintiff's misconduct, and rejected the argument that Plaintiff was terminated as a result of discrimination or disparate treatment. (Award pp. 24–34).

Arbitrator Parker considered the additional arguments and evidence submitted by

6

Plaintiff in his own post-hearing briefs. (Id. at 24 fn. 14). The Arbitrator "reviewed Grievant's briefs and . . . determined that the arguments presented there would not change her findings or conclusions." (Id.). Plaintiff's Amended Complaint includes additional allegations regarding purported deficiencies in the Union's presentation of his case to the Arbitrator. Many of these issues were addressed in the Arbitrator's award.

Plaintiff now contends the Union "failed to inform the Arbitrator" that "the Disciplinary Action was time barred[,]" that Plaintiff "did not receive an official termination letter," and that "the Disciplinary Action letter was a draft and not an official document." (Am. Compl. ¶¶ 13–15). In her award, Arbitrator Parker recognized that Plaintiff himself testified that his notice of discipline "was untimely," that he "did not receive a formal termination letter," and that "the corrective action document . . . was a draft." (Award 22–23). Arbitrator Parker also recognized that the Union urged that Plaintiff "did not receive sufficient or timely notice of discipline." (Award p. 24). Arbitrator Parker rejected that argument after an extended discussion of the relevant evidence. (See id. pp. 24–27).

Plaintiff's Amended Complaint adds allegations contending that the Union failed to call several witnesses. First, Plaintiff again alleges the Defendants failed to call Defendant Wrenn, who allegedly would have testified that ARC "agreed to address grievances at the next disciplinary action." (Am. Compl. ¶¶ 16, 33). Plaintiff's Complaint does not include any allegations regarding why the Union failed to call Defendant Wrenn.

Second, Plaintiff alleges that Defendant failed to call an investigator who "would have confirm that termination was not in proper only counseling for leaving equipment and that after discussion with Collection Manager, they both agreed this is the best course of action." (Am. Compl. ¶ 73 fn. 5). Plaintiff's Amended Complaint does not include any allegations regarding

why the Union failed to call the unnamed investigator. In her arbitration award, Arbitrator

Parker recognized that one of ARC's investigators had "recommended counseling for Grievant,"

Award p. 9, and recognized that Plaintiff had testified about that recommendation, Award p. 21,

but ultimately rejected "[t]he Union's argument that the Employer was somehow bound by [the]

recommendation[.]" (Id. p. 14).

Third, Plaintiff alleges that Defendants failed to call "another employee" who "would

have confirmed that they did not receive discipline for leaving equipment behind resulting in 90

plus minutes delay of the blood drive[.]" (Am. Compl. ¶ 73 fn. 5). Plaintiff's Amended

Complaint does not include any allegations regarding why the Union failed to call the unnamed

coworker. In her arbitration award, Arbitrator Parker recognized that "the Union assert[ed] that

all other bargaining unit employees who were involved in late starts or missing equipment . . .

received verbal or written warnings" but nevertheless upheld Plaintiff's discharge because those

workers had different disciplinary histories. (Award, pp. 30–31).

Finally, Plaintiff alleges that the "sponsor of the blood drive would have confirm that

Plaintiff was not at fault for loss of donors." (Am. Compl. ¶ 73 fn. 5). Plaintiff's Amended

Complaint does not include any allegations regarding why the Union failed to call the sponsor.

In her award, Arbitrator found that the sponsor, Yellow Tea, chose not to host another drive with

ARC in April 2020 – several months after the decision was made to terminate Plaintiff.

Arbitrator Parker did not determine why Yellow Tea chose not to host another drive, and did not

base her decision on any role that Plaintiff's misconduct played in that decision.

On January 27, 2021, Plaintiff filed a charge with the NLRB contending that the Union

breached its duty of fair representation. See (Mot. to Dismiss Ex. 7). Plaintiff alleged that the

Union breached its duty regarding how it resolved certain grievances before Plaintiff was

terminated, and because it refused to call every witness at the arbitration that Plaintiff wanted to call. (See id.). Region 10 of the Board dismissed Plaintiff's charge on April 8, 2021. See (Mot. to Dismiss Ex. 8). Plaintiff appealed that dismissal to the NLRB General Counsel's office.

On August 18, 2021, the General Counsel's office denied the appeal. See (Mot. to Dismiss Ex. 9). It noted that a union has "broad discretionary power to settle or drop grievances for many reasons" and "is not expected to do everything possible or perfectly as long as it uses reasonable judgment in good faith." (Id.). It recognized that the Union processed Plaintiff's grievance "all the way through arbitration" and allowed Plaintiff "to testify on [his] own behalf and cross-examin[e] employer witnesses." (Id.). To the extent Plaintiff alleged the Union "did not allow you to call every witness [Plaintiff] wanted, the evidence established that these tactical decisions were based on reasonable judgment and good faith that these decisions would present your case in the best possible light." (Id.).

To the extent Plaintiff complained of the Union not presenting prior grievances at arbitration, "the arbitration was centered on your current discharge" and the Arbitrator nevertheless allowed Plaintiff "to present a brief narrative about your previous grievances." (Id.). The General Counsel's office recognized that although Plaintiff was "obviously dissatisfied with how the Union handled your grievance at arbitration, there is insufficient evidence to establish that the Union's representation went beyond its broad discretion or constituted an unlawful breach of its duty of fair representation" and therefore refused to issue complaint. (Id.).

In addition to his unsuccessful NLRB charge against the Union, Plaintiff also sued the Red Cross, seven individuals, and twenty-five "John Doe" defendants contending, inter alia, that his November 2019 termination was without just cause and was retaliatory. See Fonseca v. Red Cross, 3:21-cv-00452-FJC-DSC (Doc. No. 1-1). On November 4, 2021, Magistrate Judge

Cayer recommended that Plaintiff's claims against the Red Cross be dismissed with prejudice. (Id., Doc. No. 13). Magistrate Judge Cayer additionally noted Plaintiff's history of bringing meritless lawsuits related to his employment at the Red Cross, and recommended this Court enter a pre-filing injunction against Plaintiff. (Id.).

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted). While the Court may construe Plaintiff's complaint liberally because he is a pro se plaintiff, the complaint must still allege "'facts sufficient to state all the elements of [his] claim'" to survive a motion to dismiss. Williams v. Wal-Mart Stores East, L.P., No. 5:18-CV-33-BO, 2018 WL 3341181, at *2 (E.D.N.C. July 6, 2018) (quoting Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

## III.     DISCUSSION

**A. Court's Judicial Notes of Certain Matters of Public Record**

In considering a motion to dismiss, the Court may "take judicial notice of matters of public record," and may consider documents "attached to the motion so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Defendant Teamsters Local Union 71 has attached several documents to its Motion to Dismiss, all of which can be appropriately considered by this Court. First, Defendant attaches the applicable Collective Bargaining Agreement. See (Mot. to Dismiss, Ex. 1 ("CBA")). This document was attached to Plaintiff's original Complaint and is referenced in and integral to Plaintiff's Amended Complaint. See, e.g., (Am. Compl. ¶¶ 11, 25-26, n.1).

Second, Defendant attached several e-mails. See (Mot. to Dismiss, Ex. 2). These documents were attached to Plaintiff's original Complaint and are referenced in and integral to his amended Complaint. See, e.g., (Am. Compl. ¶ 24).

Third, Defendant attached the January 23, 2021 opinion and award of Arbitrator Joan Parker, sustaining Plaintiff's discharge. See (Mot. to Dismiss Ex. 3 ("Award")). This document is referenced in and integral to Plaintiff's Amended Complaint. (Am. Compl. ¶¶ 34–35, 78; see also Clark-Williams v. Loc. 689, Amalgamated Transit Union, 37 F. Supp. 3d 361, 365 (D.D.C. 2014) (relying on an arbitration decision attached to union's motion to dismiss a duty of fair representation charge).

Fourth, Defendant attaches two charges filed by Plaintiff with the National Labor Relations Board ("NLRB"), along with subsequent documents reflecting the NLRB's final resolution of those charges. See (Mot. to Dismiss, Exs. 4–9). These documents can be considered as matters of public record. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975) (holding that NLRB documents constituting final opinions are public record); Mills v. Int'l Union of

11

Operating Engineers Loc. Union 66, 252 F. Supp. 2d 210, 214 (W.D. Pa. 2003) (holding that a "charge to the Regional Director of the NLRB, and the Regional Director's correspondence indicating that a formal complaint would not be filed are public records" that could be considered when resolving a motion to dismiss).

**B. Plaintiff's Claims against the Defendant Union**

Arbitration "is a major factor in achieving industrial peace, a vital force in establishing confidence and minimizing confusion at all levels of the labor-management relationship and a major constructive force in the collective bargaining process itself." Richmond, Fredericksburg & Potomac R. Co. v. Transp. Commc'ns Int'l Union, 973 F.2d 276, 278 (4th Cir. 1992) (internal quotations and alterations omitted). "The courts have long recognized that arbitration can succeed in achieving these goals only to the extent it is accorded finality by the judiciary." Id. "Thus, judicial review of an arbitration award is 'among the narrowest known to the law.'" Id. (quoting Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 91 (1978)). "Every presumption is in favor of the validity of the award." Id. (quoting Burchell v. Marsh, 58 U.S. (17 How.) 344, 351, 15 L.Ed. 96 (1855)). "Convincing a federal court to vacate an arbitral award is a herculean task." Warfield v. Icon Advisers, Inc. et al., 26 F.4th 666 (4th Cir. 2022).

"The federal courts do not invade this domain on the complaint of an employee unless his union is 'grossly deficient' in its representation or 'recklessly disregards' the employee's rights." Amburgey v. Consol. Coal Co., 923 F.2d 27, 29 (4th Cir. 1991); accord Vaca v. Sipes, 386 U.S. 171, 190 (1967). "This is a very difficult standard to meet." Bruce v. Local 333, Int'l Longshoremen's Ass'n, AFL-CIO, 189 F. Supp. 2d 282, 288 (D. Md. 2002); see also Shufford v. Truck Drivers Local Union No. 355, 954 F. Supp. 1080, 1087 (D. Md. 1996) ("A plaintiff alleging a breach of the duty of fair representation faces a heavy burden…"). The

judiciary's evaluation of a union's performance "must be highly deferential." <u>Air Line Pilots Ass'n, Int'l v. O'Neill</u>, 499 U.S. 65, 78 (1991).

> **i.  Timelines of Plaintiff's Claims and Statute of Limitations Bar**

> **a. Plaintiff's Claims Are Barred by the Statute of Limitations.**

First, the Court finds that Plaintiffs' claims against the Union must be dismissed as untimely. Claims based on an alleged breach of the duty of fair representation have a six-month statute of limitations. 29 U.S.C. § 160(b). The limitations period "begins to run when an employee discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." <u>Linville v. United Auto Workers of Am., Loc. 3399</u>, 415 F. Supp. 2d 656, 661 (S.D.W. Va. 2006).

In amending his Complaint, Plaintiff adds an allegation stating "North Carolina statute of limitation of breach of contract is 3 yrs." (Am. Compl. ¶ 84). State statutes, however, play no role in determining the statute of limitations for fair representation claims. <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151 (1983). Because Plaintiff did not file his claims within six months of when he knew or should have known of each breach, they must be dismissed.

> **b. Plaintiffs' Claims Regarding the 2019 Grievances Are Untimely.**

Plaintiff again alleges the Union failed to properly process grievances from before his termination in 2019. He filed suit on July 26, 2021, approximately two years after the last alleged failure. These claims are therefore untimely.

Plaintiff asserts these claims are timely because "a fair representation claims not based on how a grievance is presented to an arbitrator is tolled while good-faith attempts are made to resolve that claim through the grievance procedure." (Am. Compl. ¶ 81). But even if this is the case, Plaintiff alleges that the Union did not process the 2019 grievances to arbitration. (Am.

13

Compl. ¶¶ 24, 29). Because Defendant stopped processing Plaintiff's pre-termination grievances in 2019, his fair representation claims based on those grievances' treatment cannot be tolled.

While Plaintiff again contends that Defendant "claim[ed] [the grievances] will be addressed . . . during the arbitration hearing based on previous BA Ernest Wrenn['s]" e-mails, Am. Compl. ¶ 76, the text of those e-mails demonstrate the Union simply declined to process the grievances further and considered the underlying discipline as being "under protest." <u>See</u> (Mot. to Dismiss, Ex. 2). Nothing about the 2019 e-mails suggest the Union would ever take Plaintiff's grievances to arbitration; as Plaintiff alleges, they instead show the Union was not pursuing them any further in the grievance process.

Moreover, consistent with those e-mails, the 2019 grievances were "addressed" at the arbitration which included not just discussion of the misconduct that ultimately resulted in termination, but also Plaintiff's disciplinary history. Plaintiff was permitted to testify about issues concerning his pre-termination grievances "even if they had not been challenged or processed through the grievance and arbitration procedure."[3] (Award p. 17 n.12). Regardless, even if Plaintiff was confused about the significance of the decision not to further pursue his 2019 grievances, that would not change the fact that he was aware of that decision in 2019. <u>See Ryder v. Philip Morris, Inc.</u>, 946 F. Supp. 422, 429 (E.D. Va. 1996) (employee's "failure to appreciate the significance" of the Union's decision not to further pursue a grievance "does not change the date of the Union's alleged breach").

Plaintiff's Amended Complaint includes additional allegations making it even clearer that these claims are untimely. Plaintiff now alleges he "was made aware of the refusal to address the

---

[3] The Arbitrator considered Plaintiff's narrative and determined that his arguments did not change the opinion and award. <u>See</u> (Award, p. 24 n.14).

14

grievances during the arbitration hearing." (Am. Compl. ¶ 80). Even if Plaintiff's confusion could toll the statute of limitations, he concedes he was disabused of that confusion sometime during the hearing, which occurred "from August 12, 2020, to September 16, 2020." (Id. ¶ 31). Because he filed his original complaint more than ten months after the last date of the hearing, all claims related to these grievances are time barred.

### c. Plaintiff's Claim Regarding the 2020 Arbitration Is Untimely.

Plaintiff's claim regarding the Union's failure to call certain witnesses at the 2020 arbitration is also untimely. Plaintiff "participated in" the arbitration "from August 12, 2020, to September 16, 2020." (Am. Comp ¶ 31). He was therefore aware that the Union "refused to call" Mr. Wrenn and the other three witnesses by September 2020. Because he did not file suit within six months, this claim is also untimely.

In his Amended Complaint, Plaintiff again claims that "a fair representation claim based on how a grievance is presented to an arbitrator accrues when the employee learns of the arbitrator's decision." (Am. Compl. ¶ 81). This is in apparent references to cases such as Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir. 1986), which apply such a rule when an employee "seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceeding[.]" Id. However, the logic behind these cases turns on the fact that the employee is seeking to overturn the arbitration award. Here, Plaintiff still does not allege that Arbitrator Parker would have reached a different result had the Union chosen to call the witnesses he describes, and he does not ask this Court to set aside the arbitration award. Because Plaintiff does not seek to overturn the arbitration award, his claim accrued when he learned of the purported misconduct – not when the arbitration award issued. It is therefore untimely.

### ii. Plaintiff's Failure to State A Claim for Breach of the Duty of Fair

**Representation**

Even if Plaintiff's claims were timely, they would still be subject to dismissal because he does not plausibly allege the Union breached its duty of fair representation. "[E]vidence required to establish ineffective representation 'goes considerably beyond the requirements of a malpractice suit.'" Shufford, 954 F. Supp. at 1092 (quoting Garcia v. Zenith Elecs. Corp., 58 F.3d 1171, 1176 (7th Cir. 1995)). "[T]he union's conduct must be 'grossly deficient' or in reckless disregard of the member's rights." Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411 (4th Cir. 1986). "Simple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty." Smith v. Loc. 7898, United Steelworkers of Am., 834 F.2d 93, 96 (4th Cir. 1987). "[A] union's exercise of its judgment need not appear as wise in the glaring light of hindsight, and a violation of the duty of fair representation is not made out by proof that the union made a mistake in judgment." Id.

**a. Plaintiff Does Not Allege Facts Plausibly Suggesting the Union Breached Its Duty of Fair Representation in Failing to Process the 2019 Grievances.**

In addition to Plaintiff's claims being untimely, Plaintiff's allegations do not plausibly suggest the Union breached its duty of fair representation when it elected not to further pursue three grievances in 2019. There are no factual allegations about the substance of the grievances, no factual allegations suggesting they were meritorious, and no factual allegations suggesting there was any reason to pursue them further. Although Plaintiff has added allegations stating that the disciplinary actions were "frivolous" and the Union "would have prevailed" had they pursue him further, Am. Compl ¶ 10, 30, these conclusory allegations are not entitled to deference on a motion to dismiss. This deficiency is alone sufficient to dismiss his claims. See, e.g., Forkin v. Loc. 804 Union (IBT), 394 F. Supp. 3d 287, 301 (E.D.N.Y. 2019) (dismissing a fair

16

representation claim where the plaintiff did not "provide any factual allegations as to the . . . CBA violations," nor any "factual allegations to support an inference that the grievances [the Union] failed to file were meritorious").

This is especially true given that the Union pursued the grievance over Plaintiff's second final written warning all the way to a hearing before the Piedmont Grievance Committee, which unanimously sided with the Employer. (Award p. 7 n.7). This was the furthest the Union could have appealed this issue. (CBA pp. 9–10). Any allegations regarding purported "perfunctory" or "discriminatory" treatment of Plaintiff are refuted by the fact that the Union pursued both Plaintiff's second final written warning and termination as far as they could take it.

Moreover, even if the earlier 2019 grievances did have merit, there are no allegations suggesting the Union's decision not to pursue them was so grossly deficient as to constitute a breach of the duty of fair representation. "A union is its members' representative, not their puppet, and its duty of fair representation is not a servitude to their individual whims." Amburgey v. Consol. Coal Co., 923 F.2d 27, 30 (4th Cir. 1991). Arbitrator Parker's award demonstrates that Plaintiff was being disciplined on an almost monthly basis. The Union has the obligation to represent all of its members – not just Plaintiff. It was not obligated expend the significant resources required to send every single one of his disciplinary infractions to hearing, even had there been an arguable basis for contesting those infractions.

**b. Plaintiff Does Not Plausibly Allege the Union Breached Its Duty of Fair Representation at the 2020 Arbitration.**

Plaintiff's Complaint also fails to plausibly allege that the Union breached its duty of fair representation when it failed to call certain witnesses at the 2020 arbitration. As with any judicial proceeding, a union is not obligated to call the entire universe of witnesses who may have

17

favorable testimony. As a result, a union's failure to call a favorable witness "alone [is] not of sufficient magnitude to justify inquiry into the merits of an arbitral award[.]" Hardee v. N. Carolina Allstate Servs., Inc., 537 F.2d 1255, 1258 (4th Cir. 1976); accord Blow v. Philip Morris U.S.A., No. CIV. 3:03-CV-201, 2003 WL 23961850, at *4 (E.D. Va. Oct. 8, 2003), aff'd, 95 F. App'x 35 (4th Cir. 2004) ("Failure to call a witness or to cross-examine another is not a breach of the duty."). Instead, a union can violate the duty of fair representation when its reason for failing to call a witness was "grossly deficient or in reckless disregard of the member's rights." Ash, 800 F.2d at 411. The inquiry therefore focuses not on what a witness could have testified about, but why the union declined to call them.

Here, the Amended Complaint includes a few additional allegations regarding what four purported witnesses would have testified about, had they been called. But it is silent about why the Union failed to call these witnesses. Plaintiff certainly raises no allegations suggesting the decision not to call these witnesses was "grossly deficient or in reckless disregard" of Plaintiff's rights. It therefore does not state a claim for relief. See Johnson v. Joseph Schlitz Brewing Co., 581 F. Supp. 338, 344 (M.D.N.C. 1984), aff'd, 765 F.2d 138 (4th Cir. 1985) (finding that a union did not violate its duty of fair representation despite not calling "some of the witnesses that Plaintiff had requested" even though "plaintiff claims that [one witness's] testimony would have been determinative").

Moreover, any inference that the Union's performance was "grossly deficient" is belied by Plaintiff's other allegations. Plaintiff's hearing lasted for five days, an extraordinary length for a discharge arbitration. Cf. Johnson, 581 F. Supp. at 344 (finding no breach even though the grievant was only allowed thirty minutes to testify at arbitration). Plaintiff was permitted to provide testimony to the Arbitrator regarding his full employment history. After representing

18

him at the hearing, the Union submitted a post-hearing brief raising numerous arguments advocating for his reinstatement. See Ash, 800 F.2d at 411 (finding no breach where the union "presented a coherent argument against discharge"). Viewed in their totality, Plaintiff's allegations belie any suggestion that the Union's representation was "grossly deficient."

**c. Plaintiff Does Not Plausibly Allege Any Harm Arising from Any Breach.**

To prove a violation of the duty of fair representation, a plaintiff must establish "both 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement." Thompson v. Aluminum Co. of Am., 276 F.3d 651, 656 (4th Cir. 2002). When the Union pursues a grievance to arbitration, prejudice exists only if the Plaintiff establishes "substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568 (1976).

**i. Plaintiff's Allegations Do Not Plausibly Suggest He Was Prejudiced by Defendant's Failure to Process His 2019 Grievances.**

Plaintiff cannot show he was prejudiced by the Union's treatment of his 2019 grievances. As discussed above, Plaintiff's Complaint includes no allegations regarding the misconduct underlying his 2019 grievances, no allegations explaining why he believes the charges were "frivolous," and no factual allegations suggesting that the Union would have been able to secure a different result had they pursued the grievances further into the grievance process. Even if the Union somehow breached its duty of fair representation in its handling of these claims, Plaintiff has not shown he suffered any prejudice as a result; thus, they must be dismissed.

Plaintiff separately cannot show prejudice because the Arbitrator accepted testimony regarding his full disciplinary history, considered his arguments regarding the 2019 grievances,

19

but concluded his arguments did not change her resulting opinion. <u>See</u> (Award, p. 24 n. 14).

Even if his Amended Complaint was timely, and even if the Union breached its duty of fair

representation in failing to further process some of his 2019 grievances, Plaintiff does not and

cannot plausibly allege that he suffered any injury as a result.

**ii. Plaintiff's Allegations Do Not Plausibly Suggest He Was Prejudiced by Defendant's Failure to Call Witnesses at Arbitration.**

Plaintiff's Amended Complaint also does not plausibly suggest the Arbitrator would have

reached a different result if not for the Union's failure to call witnesses. While Plaintiff's

Amended Complaint includes a summary of the purported testimony of four uncalled

witnesses, it fails to include even a conclusory allegation that the failure to call these witnesses

affected the outcome of the proceeding. Plaintiff had the opportunity to raise all of his arguments

to the Arbitrator. She rejected them arguments not for lack of evidence, but because they were

not persuasive.

First, Plaintiff again alleges the Defendants failed to call Defendant Wrenn, who

allegedly would have testified that ARC "agreed to address grievances at the next disciplinary

action." (Am. Compl. ¶¶ 16, 33). This is nothing more than an attempt to relitigate the propriety

of the Union's 2019 decision not to further pursue the 2019 grievances, and it is rejected for

the reasons stated above. The Arbitrator considered Plaintiff's arguments about the

pretermination disciplinary actions and concluded that they did not affect her decision. (Award p.

24 n.14).

Second, Plaintiff alleges the Union failed to call an investigator who "would have

confirm that termination was not in proper only counseling for leaving equipment and that after

discussion with Collection Manager, they both agreed this is the best course of action." (Am.

20

Compl. ¶ 73, fn. 5). Arbitrator Parker rejected this argument. Although she found that one of the Red Cross's investigators had "recommended counseling for Grievant," Award p. 9, she ultimately rejected "[t]he Union's argument that the Employer was somehow bound by [the] recommendation," and upheld the termination. (Id. p. 14). It is not plausible that additional, cumulative testimony about the recommendation would have somehow convinced the Arbitrator it was dispositive.

Third, Plaintiff alleges the Union failed to call "another employee" who "would have confirmed that they did not receive discipline for leaving equipment behind resulting in 90 plus minutes delay of the blood drive[.]" (Compl. ¶ 73 fn. 5). But Arbitrator Parker recognized that the Union urged that other employees were not terminated for comparable misconduct; she nevertheless upheld Plaintiff's discharge because those workers had different disciplinary histories. (Award, pp. 30–31). The Complaint does not contend that the unnamed witness had a comparable disciplinary record as Plaintiff; it therefore does not suggest that additional, cumulative evidence regarding disparate treatment would have convinced the Arbitrator that Plaintiff deserved a seventh chance before being fired.

Finally, Plaintiff alleges that the "sponsor of the blood drive would have confirmed that Plaintiff was not at fault for loss of donors." (Compl. ¶ 73 fn. 5). But Plaintiff was not terminated just because his misconduct led to a loss of donors. Arbitrator Parker did not uphold his termination because his misconduct led to a loss of donors. The allegations therefore do not plausibly suggest that additional evidence on this point would have been seen as relevant, let alone dispositive.

Arbitrator Parker took evidence for five days. Plaintiff was permitted to testify about his full employment history, and he ithen independently submitted his own evidence and argument.

21

The

Arbitrator nevertheless found that the Red Cross had just cause for his termination, rejecting both

the Union and Plaintiff's arguments to the contrary. Plaintiff's allegations do not plausibly

suggest a "substantial reason to believe" even more evidence on points she already addressed

would have resulted in a different outcome. Hines, 424 U.S. at 568. Even if Plaintiff's

Amended Complaint were timely, and even if his allegations established a breach of the duty of

fair representation, Plaintiff has not alleged and cannot plausibly allege facts that suggest any

resulting prejudice.

### C. Plaintiff's Claims Against Defendant Wrenn

As to Defendant Wrenn, Plaintiff alleges that Wrenn breached the duty of fair

representation by allegedly failing to process grievances for events occurring before his

termination. It is well-settled law that union officers are not individually liable to third parties for

acts performed as representatives of the union. See Atkinson v. Sinclair Refining Co., 370 U.S.

238 (1962) (dismissing suit against individual union officers for allegedly breaching an

agreement); see also Complete Auto Transit, Inc. v. Reis, 452 U.S. 401 (1981) (individual union

official not liable for violation of the collective bargaining agreement even when that official's

conduct was unauthorized by the union); Morris v. Loc. 819, Int'l Bhd. of Teamsters, 954 F.

Supp. 573, 580 (E.D.N.Y. 1997), aff'd, 169 F.3d 782 (2d Cir. 1999) (dismissing duty of fair

representation claim against union officers). Thus, Plaintiff's claims against Wrenn are legally

insufficient and must be dismissed.

### IV.    CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion to Dismiss the Amended Complaint, (Doc. No. 41), is **GRANTED**, and this action is dismissed with prejudice.

2. Moreover, Defendants' Motion for Judgment on the Pleadings as to Plaintiff's original Complaint, (Doc. No. 29), shall be **TERMINATED** as **MOOT**.

3. **Finally, the Court finds that Plaintiff is a vexatious litigant. The Court warns Plaintiff that if he continues to file vexatious and meritless lawsuits in this Court, the Court will enter a pre-filing injunction against Plaintiff. This means Plaintfif will have to first obtain permission from the Court before filing any more lawsuits in this Court. Plaintiff's vexatious filings are placing an undue burden on the Court's limited time and resources for adjudicating lawsuits that contain merit. The Court will also consider imposing monetary sanctions against Plaintiff.**

Signed: May 6, 2022

Max O. Cogburn Jr
United States District Judge